# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | Case No. 3:06-CR-196 |
| Plaintiff, | * | Judge Walter H. Rice |
| vs. | * | |
| **MICHAEL E. PEPPEL,** | * | |
| Defendant. | * | |

### DEFENDANT'S SUPPLEMENTAL RESPONSE IN FURTHER
### SUPPORT OF DOCUMENTS 19 AND 22

Defendant Michael E. Peppel respectfully submits this supplemental memorandum in further support of his request for pretrial release of restrained assets.

### **INTRODUCTION**

The Government has successfully frozen and threatened to seize virtually every available asset Michael Peppel has to defend himself in this case. Without some reasonable limits on the Government's pre-trial maneuvers, this could be an exceptionally one-sided litigation. Mr. Peppel was indicted on December 13, 2006. The Indictment is massive. It spans 48 pages and includes 26 separate counts of wire fraud, mail fraud, securities fraud, money laundering, and conspiracy. One conspiracy count alone alleges 48 overt acts  There are  two forfeiture counts targeting 23 distinct assets.

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

The Indictment describes scores of complex financial transactions and assails the conduct of not only the Defendant, but five other "unindicted co-conspirators." The allegations themselves expressly require the interpretation and application of some of the most arcane GAAP accounting rules and securities regulations, beyond the expertise of most lawyers.

The Government has applied virtually limitless resources to this prosecution. Already the beneficiary of a multi-year investigation conducted by the SEC and private class-action lawyers, the Government now has at least two highly skilled Assistant United States Attorneys to lead the charge, supported by an untold number of Special Agents and in-house financial analysts. The number of professionals who have developed the civil and criminal aspects of this matter surely exceeds two dozen.

On the other side of the table sits Michael Peppel, who must defend himself at what will likely be a three- to four-month trial. With all of his listed assets restrained (Doc #11), Mr. Peppel simply has no money left to retain counsel, to hire investigators or to retain experts – all vital to the preparation of a defense. Most respectfully, absent relief from this Court in the form of released assets, Mr. Peppel's Sixth Amendment right to counsel of his choosing stands in jeopardy.

## ARGUMENT

A. **Peppel Meets the First *Jamieson* Element: He Has "No Assets" To Fund His Defense or To Support His Family.**

Under the Sixth Circuit's decision in *Jamieson*, a defendant is entitled to a post-restraint, pretrial adversarial hearing if, in the first instance, he can "demonstrate to the court's satisfaction that [he] has no assets." *United States v. Jamieson*, 427 F.3d 394, 406 (6th Cir. 2006) (*quoting United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998)). Mr. Peppel easily satisfies this burden.

2

As noted above, the Indictment's two forfeiture counts list 23 separate assets (both real and personal). All 23 assets, some of which do not even belong to Mr. Peppel, have been restrained pretrial pursuant to the December 14, 2006 Order Setting Conditions of Release.[1]

Aside from these assets, all of which are restrained, the only assets presently available to Mr. Peppel are: (i) household furnishings; (ii) vehicles; (iii) an IRA; and (iv) cash. *(See Exhibit A filed under seal).*

Mr. Peppel does have an investment in a privately- held company. (*See Exhibit A filed under seal*). That interest, however, should not be factored into the *Jamieson* analysis because it is a **privately-held company**. Absent a willing buyer, Mr. Peppel's interest remains **completely non-liquid**, and cannot be drawn upon for **any** purpose, including payment of legal fees or monthly expenses.

Mr. Peppel also received $500,000 from the January sale of his 56-percent interest in an entity called Vutex. *(See Exhibit A filed under seal).* The Government has seized upon these funds as "proof" that Peppel has assets and cannot therefore satisfy the first element of *Jamieson*. The Government's claim must be rejected.

Upon learning in February *from the defense* that the Vutex-stock-sale money would be used to fund legal fees, the Government now takes the position -- despite knowing about Vutex for at least

---

[1] On December 14, 2006, Magistrate Judge Ovington ordered that Mr. Peppel "refrain from liquidating assets listed in Indictment." (Doc # 11). The Government argues that the six real properties listed in the Indictment's forfeiture counts are not actually restrained because they are subject **only** to a notice of *lis pendens*, which (the Government argues) does not constitute a judicial restraint. Tr. 3/20/07 Hr'g 53:11-54:18. The merits of the *lis pendens* issue aside, in light of the December 14 Order, the Government's claim is baseless.

3

two years[2] -- that all assets Mr. Peppel received from Vutex in 2007 are "tainted" and are subject to criminal forfeiture.

Although the Vutex proceeds were never included in the Indictment and cannot be restrained pretrial (*infra*), the Government's recent edict that such funds are "tainted" renders them effectively restrained. No reasonable attorney would ever accept these funds for fear that the Government might someday seek to recover them. Unless the Court expressly permits Mr. Peppel to apply the Vutex proceeds towards his legal defense (*infra*), those funds should not be considered for purposes of the *Jamieson* analysis.

Aside from Vutex, the Government contends, based entirely on innuendo and conjecture ("Well, what portion of those assets do remain? We don't know." Tr. 3/20/07 at 59) that Mr. Peppel has secreted substantial assets. Yet the Government cannot point to a single shred of evidence to support this scurrilous charge. To the contrary, Mr. Peppel was forced to turn to friends to post the $250,000 cash bond.[3]

In the end, virtually all of Mr. Peppel's assets have been restrained pretrial. Those assets that remain unrestrained are either under threat of restraint (in the case of the Vutex proceeds), non-liquid (in the case of the interest in a privately-held company), or woefully insufficient to fund a proper defense or support Defendants four minor children.

---

[2] Mr. Peppel testified extensively about his investment in and salary from Vutex in his February 24, 2005 deposition in the SEC investigation.

[3] As set forth in separate affidavits filed contemporaneously with the Court *in camera*, should the Court modify the conditions of Mr. Peppel's pretrial release and release him on his own recognizance, the full $250,000 would be returned to the two individuals who advanced the funds. Tr. 3/20/07 Hr'g at 4:18-25; 9:2-12.

> **B. Peppel Meets the Second *Jamieson* Element: The Grand Jury Erred When It Determined That Assets Acquired *Before* the Alleged Illegality Began Were Derived From Or Traceable To the Charged Offenses.[4]**

The second *Jamieson* element requires that a defendant "make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets 'constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.'" *United States v. Jamieson*, 427 F.3d at 406 (*quoting United States v. Jones*, 160 F.3d at 647). As to this element, a defendant bears only the burden of production -- a burden this Defendant has already met. *See United States v. Jones*, 160 F.3d at 647.

Among the 23 assets listed in the Indictment are several that were acquired or established in the mid-to-late 1990s, **before** the unlawful conduct purportedly began.[5] Clearly, then, those properties were purchased (and to a certain extent maintained) with untainted assets, and therefore are, at least in part, untainted themselves. Those portions of the assets attributable to the period before the charged offenses are not subject to pretrial restraint and must be released. *See United States v. 250 Lindsay Lane, Russellville, Kentucky*, 04-Cr-34, 2005 WL 1994762 (W.D. Ky. Aug. 16, 2005 (court ordered that because 18 percent of the assets used to pay the mortgage on the property were untainted, that same 18 percent of the present value of the home must be released); *United States v. Najjar*, 57 F. Supp. 2d 205 (D. Md. 1999) (court ordered the release of assets equal

---

[4] For purposes of clarification, the proceeds of Defendant's Vutex stock sale have no bearing on this prong of the *Jamieson* analysis because they were never listed in the Indictment.

[5] Those properties include: (i) Defendant's home in Dayton, Ohio, which was purchased in July 1997; (ii) two parcels of land adjacent to Defendant's home, which were purchased in August 1997 and February 1998; and (iii) custodian accounts established by Defendant for the benefit of two of his four minor children, both of which were established in 1998.

to the value of defendant's initial, untainted purchase price and any improvements to the property made with untainted funds).

  **C. Those Assets Acquired By Defendant Prior to December 21, 2001 Cannot Be Restrained Pretrial.**

The *Jamieson* analysis aside, Defendant is also entitled to pretrial release of ***all*** assets (tainted or untainted) acquired before December 21, 2001. The reason for this is simple.

Although the Indictment includes two separate forfeiture counts, the first count -- based on 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2641(c) -- does not authorize pretrial restraint of assets. *See United States v. Razmilovic*, 419 F.3d 134, (2d Cir. 2005). As a result, the only count that would support pretrial restraint is the second count, based on 18 U.S.C. § 982(a)(1). That count, in turn, seeks to forfeit ***only*** those assets that are traceable to Defendant's alleged money laundering. The first incident of money laundering set forth in the Indictment is not alleged to have occurred until December 21, 2001. Any assets acquired ***prior*** to December 21, 2001, (though potentially forfeitable upon conviction) could not have been involved in, or traceable to, Peppel's alleged money laundering, and thus cannot be restrained pretrial.

  **D. This Court Should Allow the Proceeds of Defendant's Vutex Stock To Be Applied Towards His Defense.**

As noted above, the Government recently claimed, for the first time, that the proceeds of Defendant's sale of Vutex stock are tainted and are subject to forfeiture. Therefore (so the Government's theory goes), those proceeds should not be made available to Defendant, either to fund his legal defense or to support himself and his family. The Government's position is baseless.

As a preliminary matter, the proceeds of Defendant's Vutex stock sale cannot be formally restrained pretrial because the Government elected not to include Vutex in the Indictment's two

forfeiture counts. As a result, those proceeds are, at most, substitute assets which -- the Sixth Circuit has ruled --are not subject to pretrial restraint. *See United States v. Ford*, 64 Fed. Appx. 976, 982 (6th Cir. 2003).

More importantly, however, the proceeds of Mr. Peppel's Vutex stock sale are not the tainted proceeds of illicit activity, as the Government would have this Court believe. Rather, they are the product of two years of lawful, hard work and sweat equity on the part of Mr. Peppel and his co-workers.

Mr. Peppel and several colleagues started Vutex in 2003. As a partner in the company, Mr. Peppel made an initial capital contribution of $350,000, in exchange for a 56-percent of the stock. At the time of that investment, there was no guarantee whatsoever that the stock would have any value in the future.

Over the next three years, Mr. Peppel worked for Vutex, and the company became profitable. In return for his efforts, Mr. Peppel drew a relatively modest salary for someone in his position and with his level of knowledge and experience.[6] In January 2007, Mr. Peppel sold his 56-percent interest in Vutex for $500,000 in an arms' length transaction.

Accordingly, this Court should permit Mr. Peppel to use the Vutex stock sale towards his defense and the support of his family.

---

[6] From 2004 through January 2007, Mr. Peppel earned a total of $250,000 -- all of which is been used to pay his monthly expenses and outstanding legal fees incurred in the enforcement and civil actions.

## CONCLUSION

For the reasons set forth herein and in Mr. Peppel's prior submissions (Docs #22 & 31), some portion of Peppel's assets restrained pretrial must be released.

          Respectfully submitted,

          *s/ Neil F. Freund*
          Neil F. Freund (0012183)
          Bryan J. Mahoney (0071367)
          Adam C. Armstrong (0079178)
          FREUND, FREEZE & ARNOLD
          One Dayton Centre
          1 South Main Street, Suite 1800
          Dayton, OH 45402-2017
          adetmer@ffalaw.com
          bmahoney@ffalaw.com
          aarmstrong@ffalaw.com
          (937) 222-2424
          (937) 222-5369 Fax
          Attorneys for Defendant Michael E. Peppel

## CERTIFICATE OF SERVICE

      I hereby certify that on March 26, 2007 , I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Dwight K. Keller   (0074533)
Assistant United States Attorney
Attorney for Plaintiff
602 Federal Building
200 West Second Street
Dayton, OH 45402
(937) 225-2910
(937) 225-2564 (fax)
Dwight.Keller@usdoj.gov

 

                                                *s/ Neil F. Freund*
                                                Neil F. Freund (0012183)