UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 3:06cr0196 |
| v. | : | Judge Walter Herbert Rice |
| MICHAEL E. PEPPEL, | : | |
| | : | **AFFIDAVIT OF** |
| Defendant. | : | **CHARLES J. FARUKI** |
| | : | |

STATE OF OHIO        )
                     )  SS:
COUNTY OF MONTGOMERY )

Charles J. Faruki, being duly sworn, states:

## QUALIFICATIONS

1. I am an attorney at law admitted to the bar of the Supreme Court of Ohio and admitted to the bar of this Court. I make this affidavit on personal knowledge. I have been retained by the law firm of Freund, Freeze & Arnold in connection with its representation of Defendant Michael Peppel, for the purpose of offering a fee estimate and related testimony in connection with a hearing on the Defendant's attempt to get certain property released from forfeiture by the government. A copy of my Martindale Hubbell listing is attached as Exhibit A. Briefly, I attended the College of Law of The Ohio State University, graduating cum laude in 1973 and was admitted to practice law in Ohio in April 1974. Since then I have continuously practiced law in the area of litigation; the focus of my practice has always been complex litigation, including securities litigation and complex civil and criminal matters. I am one of the founders of, and a partner in, the law firm of Faruki Ireland & Cox P.L.L. in Dayton, Ohio, a

firm of approximately 40 lawyers engaged solely in litigation. I am a Fellow of the American College of Trial Lawyers and a member of the American Board of Trial Advocates.

2. My experience practicing law includes a substantial amounts of securities litigation, and of complex litigation involving work with accounting, economics, and securities experts. In the course of that work I am frequently asked by clients to prepare estimates of, and budgets for, complex cases; those estimates calculate the amount of anticipated fees and costs that would be incurred through trial in a case. My law practice involves many cases with extensive work with experts, and expert testimony, and I need to estimate for clients such costs as well. More specifically, clients, especially corporate clients, frequently require the preparation of written fee estimates, or case budgets, that require analysis of the work expected to be done, estimates of the amount of time that the work will take, application of the billing rates of the people that are going to do the work, and calculation of dollar totals for various types of activities. These estimates and budgets are not prepared just by my firm; it is common in the practice of law for complex civil and criminal litigation, that such fee estimates and budgets be prepared. Generally I express the results of such estimates or budgets in a range of dollars.

3. My hourly billing rate on this matter is $325.

## MATERIALS REVIEWED

4. In connection with this engagement I reviewed the following materials and considered the following information:

    a. The Indictment filed December 13, 2006 in this matter;

    b. The Superseding Indictment filed October 9, 2007;

2

    c.    The Docket entries in this case;

    d.    Document 48, the September 5, 2007, Decision and Entry Sustaining Defendant's Motion for Hearing to Determine Whether There is Probable Cause to Conclude That his Assets are Subject to Forfeiture;

    e.    The billing rates of the lawyers expected to be involved in this matter, shown on Exhibit B; and

    f.    Various recent authorities and articles provided to me by Freund, Freeze & Arnold regarding costs of defense in complex criminal prosecutions.

5.    I have been asked to assume two facts:

    a.    A trial on all counts of the Indictment; and

    b.    The accuracy of counsel's estimate of a trial of minimum three months' duration.

## SCOPE OF ENGAGEMENT

6.    I understand that a hearing in this matter is set for October 19. I was asked to review certain documents (listed above) and to render such opinions as I may formulate on the general subject of the fees and expenses necessary to mount an adequate defense of the charges in the Indictment, under the assumptions set forth in paragraph 5.

## **ANALYSIS AND OPINIONS**

7. My approach here was to identify the types of work that would be necessary to prepare and conduct a defense of the charges in the Indictment, through trial. I examined the billing rates of the two law firms, and used those billing rates (which I find to be reasonable for the type and complexity of this case) of the personnel of the two law firms to construct an estimate. The estimate that I prepared is shown on the chart attached as Exhibit C. Before explaining Exhibit C, let me provide certain predicate opinions for it:

> a. It is not unreasonable for the defense of these types of charges, for a defendant to engage law firms such as Lewis & Tein and Freund, Freeze & Arnold. As the Court explained in its September 5, 2007, Decision and Entry (Doc. 48), p. 9, "preparation for the trial of this prosecution, as well as the trial itself, will be quite complex, time consuming and expensive." That is my opinion as well.

> b. As I stated above, the billing rates on Exhibit B are reasonable. I have familiarity with such billing rates from professional reading (legal publications, including surveys, summaries, and articles regarding billing rates); from engaging law firms in cases where that is necessary (e.g., when a client asks me to obtain an attorney on another matter; when I must search for and obtain separate counsel for a client when I cannot represent more than one client; when I see other firms' statements for services when a client asks us to gather them, or when cost estimates are being prepared, or

4

> when the statements are gathered for presentation to insurers or for other purposes; or when a client tells me what it is paying another lawyer or firm); and from review of the materials listed in paragraph 4(c). Considering this knowledge and the factors in Ohio Professional Conduct Rule 1.5, as adopted by the Supreme Court of Ohio (copy attached as Exhibit D), it is my opinion that the fees on Exhibit B are reasonable for this type and complexity of case.

c.  It is virtually impossible for a defendant such as Mr. Peppel, faced with serious charges such as those in the Indictment here, to obtain counsel of the experience and quality of defense counsel here, and to obtain experts of the necessary qualifications, experience, and ability, unless the defendant has sufficient funds to pay for counsel and those experts. Lawyers and experts will require payment for their services, especially if the prospect is of a long trial. To mount a defense against the government's prosecution and experts requires sufficient funds.

d.  The tasks delineated on Exhibit C are necessary and appropriate to an adequate defense of the charges in the Indictment. In my experience with securities, criminal, and complex cases, the estimated times shown on Exhibit C are necessary for accomplishment of the tasks, and are reasonable estimates. I express this opinion, as are all of my opinions expressed, to a

5

reasonable degree of certainty. I constructed the estimates in the same fashion as is generally accepted for estimates of activities in complex criminal and civil litigation. The estimates are reasonable. As I always do, the estimates are expressed as a range of numbers, to account for the facts that they are estimates of future activities, that the amount of time necessary for many tasks (to cite but one example, working with experts) can take longer than initially anticipated, and that some of the activities in the case (e.g., the length of the trial) will be driven by or affected by the actions of the government and hence are outside control of defendant or of defense counsel.

8. <u>Attorneys' fees</u>. I identified and listed the categories of work necessary to prepare and try the case for the Defendant, on the charges in the Indictment. After listing the categories, I estimated the numbers of hours of various attorneys or paralegal that would be required to accomplish the tasks. As shown on Exhibit C, I multiplied the number of hours by the hourly billing rates of the attorneys and paralegal (those hourly billing rates being shown on Exhibit B). Specifically, the resulting range for attorney/paralegal expense was derived by (a) multiplication of the estimated lower number of hours by the billing rates and then (b) multiplication of the estimated higher number of hours by that same set of billing rates. The Total Attorneys' Fees line in column D on the last page of Exhibit C contains the range of estimated attorneys' fees, which I calculated (a) by adding the low range of the line Subtotal Attorneys' Fees Before Trial on the previous page, to the Subtotal Trial Attorneys' Fees amount to derive the low end of the range of Total Attorneys' Fees in column D; and (b) by adding the

high range of the line Subtotal Attorneys' Fees Before Trial, to the Subtotal Trial Attorneys' Fees amount to derive the high end of the range of Total Attorneys' Fees in column D. A further explanation is necessary. I did not try to predict which partner-level or lead attorney (for example, Mr. Freund or Mr. Lewis), or which firm's other attorney (Ms. Meyers or Mr. Armstrong) or paralegal would handle particular activities; the total number of hours for each Phase or set of Activities is reasonable and appropriate, and (depending upon how the legal team allocated the necessary tasks among themselves) one lawyer might handle more of one type of activity and less of another, while another lawyer handled other tasks. The quantum of work and hours necessary to perform it are reasonable and appropriate. The resulting ranges are reasonable estimates of the costs to be incurred to provide an adequate defense in this action.

9. <u>Experts' fees</u>. To estimate the expense of experts, I used a range of hourly rates (which I know from my experience), and to derive the estimate I (i) multiplied the lower billing rate by the lower number of hours, resulting in the lower end of the range, and then (ii) multiplied the higher billing rate by the higher number of hours, resulting in the higher end of the range. From my extensive work with experts including accountants and securities' experts, I am familiar with the types of experts, and the range of their charges, to provide services in connection with litigation of accounting and securities issues. Based upon that experience, I derived the estimates shown under Experts on Exhibit C, which are reasonable.

10. <u>Costs</u>. In addition to attorneys' fees, a client incurs costs in representation by counsel. A nonexhaustive list of such costs includes long distance telephone charges, postage, courier fees (such as Federal Express charges), travel expenses (hotel, airfare, car rental, meals, <u>etc</u>.), witness fees for subpoenas, court reporter charges, copying costs, costs of exhibit preparation and of demonstrative or explanatory exhibits and displays, <u>etc</u>. Typically I tell

7

clients that costs (other than for fees of experts) can be expected to range from 10-15% of attorneys' fees, depending on such factors as travel required, location of witnesses, demonstrative evidence needs, etc. That range is reasonable here, so I used that same range of costs, as shown on Exhibit C, to derive a total for attorneys' fees, experts' fees, and costs.

_____
Charles J. Faruki

Sworn to before me and subscribed in my presence by Charles J. Faruki this 17th day of October, 2007.

_____
Notary Public
VICKI A. JOYCE, Notary Public
In and for the State of Ohio
My Commission Expires Nov. 2, 2009

188244.1

8