UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : Case No.: 3:06CR196-SSB |
| | : |
| **Plaintiff,** | : Memorandum of Legal Authorities |
| | : |
| vs. | : |
| | : |
| **MICHAEL E. PEPPEL,** | : |
| | : |
| **Defendant.** | : |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Southern District of Ohio, hereby files its memorandum of legal authorities concerning the loss calculation and other sentencing matters in this case.  This filing is based upon the attached memorandum of points and authorities, the files and records in this case, and any further evidence or argument as may be presented at any hearing on this matter.

DATED: June 17, 2011

Respectfully submitted,

CARTER M. STEWART
UNITED STATES ATTORNEY

s/ Dwight Keller & Brent G. Tabacchi
DWIGHT KELLER (0074533)
BRENT G. TABACCHI (6276029 IL)
Assistant United States Attorneys
Attorneys for Plaintiff
602 Federal Building
200 West Second Street
Dayton, OH   45402
Telephone: (937) 225-2910
Fax: (937) 225-2564

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Loss Calculations**

   a.      **Actual and Intended Loss:** Under U.S.S.G. § 2B1.1, loss in a criminal fraud prosecution constitutes "the greater of actual loss or intended loss." U.S.S.G. § B1.1 cmt. 2(A); United States v. Warshak, 631 F.3d 266, 328-29 (6th Cir. 2011).  Actual loss concerns "the reasonably foreseeable pecuniary harm that resulted from the offense." United States v. Mickens, 453 F.3d 668, 671 (6th Cir. 2006).  In contrast, intended loss is "the pecuniary harm that was intended to result from the offense," including pecuniary harm "that would have been impossible or unlikely to occur."  U.S.S.G. § B1.1 cmt. 2(A)(ii); Warshak, 631 F.3d at 329. Whether calculating either actual or intended loss, this Court "need only make a reasonable estimate of the loss" given the available information.  U.S.S.G. § B1.1 cmt. 2(C) (emphasis added); Warshak, 631 F.3d at 329.  Use of loss estimates is particularly appropriate "in situations where the losses occasioned by financial frauds are not easy to quantify." United States v. Triana, 468 F.3d 308, 320 (6th Cir.2006).  Moreover, in contrast to restitution obligations or civil damages, under the Sentencing Guidelines, loss estimates "need not be determined with precision." Warshak, 631 F.3d at 329.

   b.      **Dura Pharmaceutical:** Although courts have applied the Supreme Court's decision in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346-48 (2005), to calculate loss in criminal securities prosecutions, see, e.g., United States v. Rutkoske, 506 F.3d 170, 179-80 (2d Cir.2007); United States v. Olis, 429 F.3d 540, 546-49 (5th Cir.2005), strict adherence to this methodology in this case conflicts with not only the purposes of criminal sentencing but with the plain terms of the Sentencing Guidelines detailed above.  See United States v. Berger, 587 F.3d 1038, 1043-1045 (9th Cir. 2009) (literal application of Dura conflicts with the Sentencing

1

Guidelines and undermines the purpose of criminal sentencing); United States v. Mooney, 425 F.3d 1093, 1100 n.6 (8th Cir. 2005) (questioning application of Dura in criminal context, noting "criminal prosecutions for violations of securities law are different, however, for the victims and their losses are difficult if not impossible to identify as the guideline commentary points out."); see also United States v. Nacchio, 573 F.3d 1062, 1078-79 (10th Cir. 2009) ("Although we consider it to be appropriate in some situations to seek guidance from civil jurisprudence [i.e., Dura] in performing the criminal sentencing function,. . . , we must be constrained by the nature of our undertaking in a criminal").  More precisely, in a civil fraud case, "a court gauges loss from the perspective of the plaintiff-victim, i.e., whether the plaintiff can show the amount and cause of loss [that he individually] sustained." Berger, 587 F.3d at 1044.  In comparison, in criminal sentencing:

> however, a court gauges the amount of loss caused, i.e., the harm that society as a whole suffered from the defendant's fraud.. . .  Whether and to what extent a particular individual suffered actual loss is not usually an important consideration in criminal fraud sentencing. Therefore, where the value of securities have been inflated by a defendant's fraud, the defendant may have caused aggregate loss to society in the amount of the fraud-induced overvaluation, even if various individual victims' respective losses cannot be precisely determined or linked to the fraud. As a result, the principle underlying the Dura Pharmaceuticals Court's reluctance to allow mere overvaluation as a basis for establishing loss is generally not present in the criminal sentencing context, and we are not persuaded that it would be appropriate to expand the Dura Pharmaceuticals rule to the criminal sentencing context.

Id.  Additionally, an inflexible application of Dura in criminal cases conflicts with the Sentencing Guidelines, which merely call for flexible calculations and reasonable – not precise – estimates of loss.  Id.  Indeed, strict adherence to Dura effectively would eviscerate the Guidelines mandate to use intended loss – if greater than actual loss – in crafting a defendant's sentence.  Although Dura's methodology may prove an appropriate measure of restitution – which does gauge harm

2

to the victim – it should not drive loss calculations in a criminal sentencing hearing. See id. at 1044 n.7.

      c.    **Relevant Conduct:** The Sentencing Guidelines do not circumscribe loss in a securities fraud case merely to those individuals who held shares in the defendant's company. rather, where, as here, banks loaned money to the defendant based, in part, upon his fraudulent representations concerning the financial health of his company, this Court may properly consider the financial institutions' losses (in addition to those of the investors) in calculating the Sentencing Guidelines. See, e.g., United States v. Paul, 634 F.3d 668, 676-678 (2d Cir. 2011) (holding that district court properly considered losses of not only investors but also banks who extended loans to securities fraud defendant).

## II.    Sophisticated Means

Under the Sentencing Guidelines, sophisticated means involve "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense" such as "hiding . . . transactions." U.S.S.G. § 2B1.1 cmt. 6(B). When considering whether a conspiracy involved sophisticate means, a court should not isolate each individual transaction of the criminal conduct, but rather should consider the sophistication of the scheme based on the activities comprising it as a whole. See United States v. Tandon, 111 F.3d 482, 491 (6th Cir.1997) ("While in isolation these things may not have been enough to constitute "sophisticated means," taken together, however, as noted by the district court, they demonstrate a sophisticated and multi-pronged effort to deceive."). "[A] sophisticated-means enhancement [may] be applied to a [defendant] even if his role in the conspiracy did not involve the use of

//

//

3

sophisticated means so long as the use of such means [by a co-conspirator] was reasonably foreseeable to him." <u>United States v. Cosgrove</u>, 637 F.3d 646, 666 (6th Cir. 2011).

DATED: June 17, 2011        Respectfully submitted,

CARTER M. STEWART
UNITED STATES ATTORNEY

s/Dwight Keller & Brent G. Tabacchi
DWIGHT KELLER
BRENT G. TABACCHI
Assistant United States Attorneys
Attorneys for Plaintiff
602 Federal Building
200 West Second Street
Dayton, OH   45402
Telephone: (937) 225-2910
Fax: (937) 225-2564

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 17nd day of June 2011, via the Court's ECF system on defendant's counsel.

s/Brent G. Tabacchi
BRENT G. TABACCHI
Assistant United States Attorney

4