UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Case No.: 3:06-cr-00196-SSB |
| : | |
| v. : | Judge Sandra S. Beckwith |
| : | |
| **MICHAEL E. PEPPEL,** : | |
|       **Defendant.** : | |

### SUBMISSION TO COURT REGARDING LOSS

Defendant Michael E. Peppel, by and through counsel, respectfully submits the following to the Court.

A. <u>Loss</u>

The Defendant is not aware of any case in which the Sixth Circuit has applied the loss calculations in Section 2.B.1.1 of the Federal Sentencing Guidelines to a public securities fraud case, nor is he aware of any case in which the Sixth Circuit has considered the application of the Supreme Court's decision in <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 US 336 (2005).  While the federal circuit courts that have considered these issues have reached different conclusions about the applicability of <u>Dura</u> itself and have taken different approaches to developing their standards for evaluating loss calculations for Section 2.B.1.1, each of the circuits that has addressed the question of loss in criminal securities fraud cases has imposed the same basic substantive standards on the sentencing court: (i) the government must establish that the defendant <u>proximately</u> <u>caused</u> the loss, i.e., the decline in share price complained of by the government, and distinguish the effects of the defendant's fraud from other factors affecting the company's share price and (ii) while the court is given latitude with the quantitative details of the loss estimate, the logical and factual underpinnings of the estimate are subject to much stricter scrutiny.  Because the loss calculation included in the Probation Office's Presentence Investigation Report ("PSIR") does not, and does not seriously attempt to, meet these standards,

the calculation is not legally supportable under the Federal Sentencing Guidelines or applicable case law in any federal circuit, irrespective of whether that circuit specifically applies Dura in the criminal context.

    1. Loss Causation

In Dura, the Court held that the plaintiff in a civil securities fraud case must "prove that the defendant's misrepresentation … proximately caused the plaintiff's economic loss" (Dura at 346) and that to do so the plaintiff must, among other things, distinguish the effects of the defendant's fraud from "the tangle of factors affecting [share] price" including "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events" (Dura at 343).  In United States v. Rutkoske, 506 F.3d 170 (2nd Cir. 2007), the Second Circuit held that Dura applies to criminal cases and rejected the district court's sentence because its estimate of the loss caused by the defendant's fraud failed to take into account "other factors relevant to a decline in" the company's "share price" (Rutkoske at 180).  Likewise, in United States v. Olis, 429 F.3d 540 (5th Cir. 2005), the Fifth Circuit expressly adopted the Dura approach when it rejected the sentencing court's loss estimate for failing to distinguish the effects of the defendant's fraud from "extrinsic factors"  (Olis at 548). The court held that "the civil damage measure should be the backdrop for criminal responsibility both because it furnishes the standard of compensable injury for securities fraud victims and because it is attuned to stock market complexities" (Olis at 546).  The Tenth Circuit has also endorsed the Dura-based approach, noting that "criminal cases have the same 'tangle of factors affecting price' … that is found in civil cases" (United States v. Nacchio, 573 F.3d 1062, 1078 (10th Cir. 2009), internal citations omitted).

While the Ninth Circuit is the only appellate court that has expressly declined to apply Dura to criminal cases, it still applies a strict standard of loss causation in criminal securities fraud cases and requires the sentencing court to distinguish the effects of the defendant's fraud

2

from other factors.  In United States v. Berger, 587 F. 3d 1038 (9th Cir. 2009), the very case in which the circuit court rejected Dura, the court held that the Guidelines' requirement that the sentencing court make a reasonable estimate of loss "does not obviate the requirement to show that actual, defendant-caused loss occurred" (Berger at 1045) and instructed the sentencing court to resentence the defendant after it determined "how much of the shareholders' loss was actually caused by [the defendant's] fraud" and not by other factors (Berger at 1046-47).  Similarly, in United States v. Zolp, 479 F.3d 715 (9th Cir. 2007), the Ninth Circuit held that the sentencing court "must disentangle the underlying value of the stock, inflation of that value due to fraud, and either inflation or deflation of that value due to unrelated causes" (Zolp at 719).

      While the other federal circuits have not ruled specifically on the applicability of Dura in the criminal context, all that have addressed the application of the 2.B.1.1 loss estimate to securities fraud cases have applied standards consistent with the common principles established by the Fifth, Second and Ninth Circuits.  Moreover, even the Guidelines themselves make clear that the loss estimate is subject to strict standards of causation.  For example USSG Supp 2 App C, Amdt 617 (November 1, 2001) explains that the Guidelines' definition of actual loss "incorporates [a] causation standard that, at a minimum, requires factual causation (often called 'but for' causation) and provides a rule for legal causation (i.e., guidance to courts requiring how to draw the line as to what losses should be included and excluded from the loss determination)".

      While the Defendant believes that the Dura-based approach adopted by the Second and Fifth Circuits is preferable as a legal matter, it is not necessary for the Court to adopt this approach in rejecting the loss estimates proposed by the Probation Office and by the United States Attorney.  Indeed, as the Third Circuit noted in United States v. Brown, 595 F.3d 498, Note 32 (3rd Cir. 2010), for this purpose the nominal distinctions between the different circuits' approaches make little difference.  Each circuit requires clear proof that the defendant's fraud actually caused a loss and a careful effort to distinguish the effects of the defendant's conduct

3

from other factors. Because they do not make a serious attempt to meet either of these requirements, the loss estimates of the Probation Office and the United States Attorney do not meet the standards of any federal circuit.

    2. <u>Reasonable Estimate of Loss</u>

While Application Note 3 (C) to the Section 2.B.1.1 of the Federal Sentencing Guidelines requires only a reasonable estimate of loss, circuit courts that have considered the issue have uniformly held that this provision of the Guidelines is intended only to give sentencing courts some quantitative flexibility to make legally and logically sufficient loss calculations, not to allow them to ignore the standards of loss causation described above. For example, the court in <u>Berger</u> held that the fact that the sentencing court is required to make only a reasonable estimate of loss does not eliminate the requirement that the sentencing court identify "actual defendant-caused loss", but rather "merely indicates that, in arriving at the loss figure, some degree of uncertainty is tolerable" (<u>Berger</u> at 1045). Likewise, in <u>Olis</u>, the circuit court held that "while the district court need only make a 'reasonable estimate of loss' … this court first determines whether the trial court's method of calculating the amount of loss was legally acceptable" (<u>Olis</u> at 545).

Considering the question of what exactly constitutes a reasonable estimate, the Ninth Circuit Court in <u>United States v. Laurienti</u>, 611 F.3d 530 (9th Cir. 2010), distinguished between the "inherent imperfections" of estimates, which the Court characterized as primarily quantitative in nature, and "logical defects," which it defined as factual errors and failures to address important matters. The Court concluded that while inherent imperfections are permissible as long as they are "logical and are not prone to overwhelming the final result" logical defects render a loss calculation fatally unreasonable, even when the precise quantitative effects of the defects cannot be calculated (*see* <u>Laurienti</u> at 559). Although the Sixth Circuit has not defined what a reasonable estimate is for securities fraud purposes, its recent decision in <u>United States v.</u>

4

Jones, No. 09-3664, 2011 WL 1364009 (6th Cir. Apr. 12, 2011), in which it rejected a loss estimate based on a logically and factually flawed statistical analysis in a healthcare fraud case as "procedurally unreasonable," applies a standard that is very similar to the Ninth Circuit's approach in Laurienti (Jones at 3).

The Probation Office's loss estimate here fails under the standards of both Laurienti and Jones because it includes analytical flaws, factual errors and unsupportable assumptions that render it procedurally or logically unreasonable.  For example, it is an incontrovertible fact that a meaningful number of MCSi's shares were not traded during the fraud period and so cannot possible have engendered or suffered a loss cognizable under Section 2.B.1.1.  Accordingly, the PSIR loss calculation is not reasonable because it fails to account for these shares.  Similarly, the PSIR's failure to make any attempt to distinguish the effects, if any, of Mr. Peppel's fraud on MCSi's share price from even the most obvious and important other factors affecting it, including the Company's very substantial decline in performance and share price over the previous year, the tremendous decline in the Company's industry during the period, analyst and investor discomfort with the Company's strategy of growth by acquisition, the failure of the expected surge of video conferencing technology following the September 11th terrorist attacks and the effects of Ira Stanley's serious and distinguishable fraud, likewise render the PSIR's loss calculation unreasonable and untenable.

                                                Respectfully submitted,

                                                /s/ *Ralph W. Kohnen*
Ralph W. Kohnen (0034418)
Jeanne M. Cors (0070660)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
(513) 381-0205 (facsimile)
kohnen@taftlaw.com
cors@taftlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing Motion for Extension was served electronically upon counsel of record via the Court's CM/ECF system, this 17th day of June, 2011.

/s/ *Ralph W. Kohnen*
Ralph W. Kohnen